## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>TRAVON JONES. | No. 3:21-cr-00008-5 (VAB) |

### RULING AND ORDER ON MOTION TO WITHDRAW GUILTY PLEA

On May 3, 2021, the Government secured a superseding Indictment charging Mr. Jones with conspiracy to engage in a pattern of racketeering activity, with a special circumstance of murder, in violation of 18 U.S.C. § 1962(d). Superseding Indictment, ECF No. 52 ("Indictment"). At his initial appearance before Magistrate Judge Farrish, Mr. Jones pled not guilty. Min. Entry, ECF No. 82.

On August 29, 2022, Mr. Jones appeared before this Court to enter a change of plea. Min. Entry, ECF No. 246 ("Plea Hrg."). In accordance with a written plea agreement filed with the Court, Mr. Jones pled guilty to Count One, which charged him with conspiracy to engage in a pattern of racketeering activity, with a special circumstance of murder, in violation of 18 U.S.C. § 1962(d). *See* Plea Agreement, ECF No. 247 ("Plea").

On March 9, 2023, Mr. Jones filed a motion to withdraw his guilty plea. Mot. to Withdraw Guilty Plea, ECF No. 322 ("Mot.").

On July 7, 2023, after the original motion was fully briefed, Mr. Jones filed a supplemental motion to withdraw his guilty plea. Suppl. Memo Re: Mot. to Withdraw Plea of Guilty, ECF No. 357 ("Suppl. Mot.").

For the following reasons, Mr. Jones's motion to withdraw his guilty plea is **GRANTED**.

I.     **FACTUAL AND PROCEDURAL BACKGROUND**[1]

On April 6, 2020, Mr. Jones turned eighteen. Suppl. Mot. at 1.

On May 3, 2021, a grand jury returned a superseding Indictment charging Mr. Jones with conspiracy to engage in a pattern of racketeering activity, with a special circumstance of murder, in violation of 18 U.S.C. § 1962(d). Indictment.

At the time the superseding Indictment was returned, Mr. Jones was incarcerated at Manson Youth Institution ("Manson Youth"), a state facility in Cheshire, Connecticut, so, on May 11, 2021, the Government filed an application for writ of habeas corpus *ad prosequendum*. Application for Writ of Habeas Corpus *Ad Prosequendum*, ECF No. 71.

On May 11, 2021, Magistrate Judge Farrish granted the application and issued the writ. Order, ECF No. 72; Writ of Habeas Corpus, ECF No. 73.

On May 12, 2021, Mr. Jones pleaded not guilty during his initial appearance before Magistrate Judge Farrish. Min. Entry, ECF No. 82.

On July 7, 2021, the Government filed a consent motion for a pre-trial scheduling order. Mot. to Adjourn Pre-Trial & Trial Scheduling Order, ECF No. 144.

On July 12, 2021, the Court granted the motion and adopted a pre-trial schedule. Order, ECF No. 155.

On April 6, 2022, the Government filed a motion for a status conference. Mot. for Telephonic Status Conf., ECF No. 210.

On April 7, 2022, the Court granted the motion and scheduled a status conference for April 21, 2022. Order, ECF No. 211.

On April 21, 2022, the Court held a status conference regarding the pre-trial schedule.

---

[1] While this multi-Defendant case has a lengthy procedural history, the Court focuses only on what is relevant to Mr. Jones.

Min. Entry, ECF No. 215.

On April 21, 2022, the Court entered an order directing the parties to file motions to sever by May 13, 2022 and continuing the trial date until April 2023. Order, ECF No. 216.

On August 29, 2022, the Court held a change of plea hearing and Mr. Jones changed his plea to guilty. Plea Hrg.; Plea.

On October 27, 2022, the Court received a letter from Mr. Jones in which he requested new counsel and stated that he wanted to withdraw his guilty plea.

On November 23, 2022, the Court received a second letter from Mr. Jones, reiterating much of the content of his first letter and stating that he first realized he wanted to withdraw was one month after he pleaded guilty.

On December 14, 2022, the Court scheduled a hearing about Mr. Jones's dissatisfaction with his counsel of record. Notice, ECF No. 258.

On December 16, 2022, the Court received a third letter from Mr. Jones again requesting to withdraw his plea and proceed either with new counsel or without his prior counsel.

On January 24, 2023, the Court held a hearing about Mr. Jones's representation, much of which went forward on an *ex parte* basis without the Government counsel due to issues that may have involved attorney-client privileged information. Min. Entry, ECF No. 271.

On February 8, 2023, Mr. Jones's prior counsel filed a motion to withdraw and a motion for appointment of CJA counsel. Mot. to Withdraw & for Appt. of CJA Counsel, ECF No. 279.

On February 9, 2023, the Court granted both motions. Order, ECF No. 280.

On February 10, 2023, Attorney W. Theodore Koch, III was appointed as Mr. Jones's new counsel.

On March 9, 2023, Mr. Jones, with the assistance of his new counsel, filed a motion to

withdraw his guilty plea. Mot.

On March 23, 2023, the Government filed its opposition to the motion to withdraw. Mem. in Opp'n to Mot. to Withdraw, ECF No. 337 ("Opp'n").

On March 27, 2023, Mr. Jones filed a reply brief in support of his motion to withdraw. Reply in Supp. of Mot. to Withdraw, ECF No. 338 ("Reply").

On June 7, 2023, Mr. Jones filed a supplemental memorandum in support of his motion to withdraw. Suppl. Mot.

On June 8, 2023, the Court ordered the Government to file a response to the supplemental motion by June 16, 2023. Order, ECF No. 358.

On June 14, 2023, the Government filed a memorandum in opposition to the supplemental memorandum. Mem. in Opp'n to Suppl. Mot., ECF No. 359 ("Suppl. Opp'n").

On June 29, 2023, Mr. Jones filed a reply brief in support of his supplemental memorandum. Reply in Supp. of Suppl. Mot., ECF No. 366 ("Suppl. Reply").

## II.    STANDARD OF REVIEW

Under Rule 11 of the Federal Rules of Criminal Procedure, a criminal defendant may withdraw a plea of guilty "after the court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). "[A] defendant who seeks to withdraw his plea bears the burden of satisfying the trial judge that there are valid grounds for withdrawal, taking into account any prejudice to the government." *United States v. Gonzalez*, 970 F.2d 1095, 1100 (2d Cir. 1992) (internal quotation marks omitted).

"A defendant has no automatic entitlement to have such a motion granted, for society has a strong interest in the finality of guilty pleas, and allowing withdrawal of pleas not only

undermines confidence in the integrity of our judicial procedures, but also increases the volume of judicial work, and delays and impairs the orderly administration of justice." *United States v. Maher*, 108 F.3d 1513, 1529 (2d Cir. 1997) (internal quotation marks omitted). Accordingly, "[t]he fact that a defendant has a change of heart prompted by his reevaluation of either the Government's case against him or the penalty that might be imposed is not a sufficient reason to permit withdrawal of a plea." *Gonzalez*, 970 F.2d at 1100.

When determining whether the defendant has presented a "fair and just reason" for withdrawal under Rule 11, the Court considers the following factors: "(1) whether the defendant has asserted his or her legal innocence in the motion to withdraw the guilty plea; (2) the amount of time that has elapsed between the plea and the motion (the longer the elapsed time, the less likely withdrawal would be fair and just); and (3) whether the government would be prejudiced by a withdrawal of the plea." *United States v. Schmidt*, 373 F.3d 100, 102–03 (2d Cir. 2004). Courts also "consider whether the defendant 'has raised a significant question about the voluntariness of the original plea.'" *United States v. Albarran*, 943 F.3d 106, 117 (2d Cir. 2019) (quoting *Schmidt*, 373 F.3d at 103).

## III.   DISCUSSION

In his motion, Mr. Jones argues that his guilty plea should be withdrawn because each of the *Schmidt* factors weigh in his favor. *See generally* Mot.; Suppl. Mot.

The Court will address each *Schmidt* factor in turn.

### A.  Legal Innocence and Factual Basis for the Plea

Under Rule 11(b)(3), a district court must determine that there is a factual basis for the plea before entering judgment. Fed. R. Crim. P. 11(b)(3); *United States v. Pattee*, 820 F.3d 496, 509 (2d Cir. 2016). This rule requires the district court "to assure itself simply that the conduct to

5

which the defendant admits is in fact an offense under the statutory provision under which he is pleading guilty." *United States v. Lloyd*, 901 F.3d 111, 123 (2d Cir. 2018) (internal quotation marks and citation omitted). In making this determination, the district court "is not required to rely solely on the defendant's own admissions," *Maher*, 108 F.3d at 1524; however, "the factual basis for the plea must be developed on the record at the time the plea is taken," *United States v. Adams*, 448 F.3d 492, 502 (2d Cir. 2006). *See also United States v. Andrades*, 169 F.3d 131, 134 (2d Cir. 1999) ("[T]he district court must place facts on the record at the time of the plea after an inquiry of the defendant, the government, or other available sources of information.").

Mr. Jones argues that he is legally innocent because there is an insufficient factual basis to find that, under the Juvenile Delinquency Act, the Government can properly prosecute him in federal court. Suppl. Mot. at 1.

"The [Juvenile Delinquency Act] governs the federal prosecution of a defendant who is indicted before he reaches the age of twenty-one and who is accused of having committed federal crimes before the age of eighteen." *United States v. Scott*, 681 F. App'x 89, 93 (2d Cir. 2017), *abrogated on other grounds by United States v. Capers*, 20 F.4th 105 (2d Cir. 2021) (citing *United States v. Ramirez*, 297 F.3d 185, 190 (2d Cir. 2002)). "The relevant 'act' for purposes of determining federal jurisdiction under § 5032 is the crime charged in the indictment—here, the substantive RICO and RICO conspiracy offenses alleged therein—rather than the discrete predicate acts underlying those charges." *United States v. Wong*, 40 F.3d 1347, 1365 (2d Cir. 1994).

Federal courts generally do not have jurisdiction over a prosecution under the Juvenile Delinquency Act unless the U.S. Attorney General certifies that certain conditions exist, including, for example, that the "appropriate court of a State does not have jurisdiction." *Id.*; *see*

*also* 18 U.S.C. § 5032. Typically, therefore, for such defendants, "[c]ertification is a prerequisite to the exercise of federal jurisdiction." *Wong*, 40 F.3d at 1363.

Under *Wong*, however, such a prosecution can go forward without certification and even if the charged crime began before the defendant turned eighteen as long as the defendant "affirmatively continued his participation after his eighteenth birthday." *Scott*, 681 F. App'x at 93 (citing *Wong*, 40 F.3d at 1365). "This concept has been analogized to contract 'ratification' doctrine: just as a minor legally incapable of entering a contract may nonetheless be found to have 'ratified' a contract by taking actions after attaining majority consistent with an intent to be bound by it, . . . so a defendant may ratify his pre-eighteen participation in a conspiracy by continued participation after attaining majority." *Wong*, 40 F.3d at 1366 (citations omitted).

Mr. Jones argues that this Court lacks subject matter jurisdiction over him because there is no factual basis in the record to show that he ratified his conduct after he turned eighteen. Suppl. Mot. at 3–4. In Mr. Jones's view, the plea agreement is insufficient because it "conclusorily states that 'from January 2017 until the date of the Superseding Indictment, Mr. Jones was a member or associate of the East End Gang in Bridgeport,'" which does not include any affirmative actions taken in furtherance of the conspiracy after Mr. Jones turned eighteen. *Id.* at 4. Mr. Jones also emphasizes that the Government did not claim that it had "established jurisdiction through ratification under *Wong*," at the plea hearing or before. *Id.*

The Government argues that Mr. Jones ratified his conduct after turning eighteen because he continued to be a member of the alleged racketeering conspiracy. Suppl. Opp'n at 2–3. In the Government's view, it is a sufficient factual basis that in the plea and during the plea colloquy, Mr. Jones "stipulate[d] that . . . from January 2017 until the date of the Superseding Indictment, [he] was a member or associate of the East End Gang in Bridgeport, Connecticut; [and] that in

furtherance of the East End enterprise, [he] conspired with, and aided other East End Gang members who sold narcotics and committed acts of violence." *Id.* at 5–6. The Government argues that, "Mr. Jones not only failed to disaffirm his membership in the gang on reaching the age of majority (which alone would have been insufficient), but he agreed by stipulation that he was and remained an East End Gang member for more than a year after he attained the age of majority and that his conspiracy included an agreement to "s[ell] narcotics and commit[] acts of violence" and that he knew that "acts of retaliation were expected of members and associates of East End Gang." *Id.* at 7–8. Finally, the Government proposes that, if the Court doubts the factual basis of the plea, it should not allow Mr. Jones to withdraw, but should instead proceed to the presentence investigation report or conduct an evidentiary hearing. *Id.* at 8.

In response, Mr. Jones argues that it cannot be sufficient that he pleaded guilty to the alleged time frame in the Indictment because there is no evidence that Mr. Jones "sold narcotics, committed acts of violence, or committed any other acts in furtherance of the conspiracy" after he turned eighteen. Suppl. Reply at 1–2. Mr. Jones contends that a "person who does absolutely nothing to further the conspiracy or to reaffirm membership after his 18th birthday cannot be held criminally liable in federal court." *Id.* at 2 (citing *United States v. McClaren*, 13 F.4th 386, 408 (5th Cir. 2021)). In Mr. Jones's view, a juvenile must take some affirmative action in order to ratify his pre-eighteen conduct. *Id.* at 2–3 (citing *United States v. Mendez*, 28 F.4th 1320, 1326 (9th Cir. 2022) (stating that the juvenile must engage "in additional acts in furtherance of the ongoing conspiracy after reaching the age of majority")).

The Court agrees, in part.

Courts considering whether there are sufficient facts to support subject matter jurisdiction under the Juvenile Delinquency Act regularly find that there is jurisdiction when the defendant

takes some affirmative action in furtherance of the charged conspiracy after turning eighteen. *See, e.g.*, *Scott*, 681 F. App'x at 92–94 (finding the defendants had sufficiently ratified their pre-eighteen conduct to satisfy the Juvenile Delinquency Act because at trial, the Government introduced evidence that the defendants "fled during a traffic stop from a car driven by another gang member and containing a gun," the defendants "cooked drugs with other gang members, after each reached age eighteen," and witnesses had "seen multiple guns accessible to the occupants of and visitors to a drug house that was controlled by" the defendants); *Williams v. United States*, No. 5:17-CV-860 (NAM), 5:11-CR-198(2) (NAM), 2018 WL 9489250, at *4–5 (N.D.N.Y. Aug. 27, 2018) (denying the defendant's motion to withdraw arguing that there was an insufficient factual basis to find jurisdiction under the Juvenile Delinquency Act because the defendant participated in, and stated so in the plea agreement and colloquy, seven acts in furtherance of the conspiracy, including possessing weapons, shooting a rival gang member, and being present for a drug transaction). *Cf. United States v. Geraldo*, 687 F. App'x 101, 109 (2d Cir. 2017) (remanding to the district court to determine whether "it properly had and retained jurisdiction over [the defendant's] case under the [Juvenile Delinquency Act]" and stating that "[i]f the district court does not find by a preponderance of the evidence that [the defendant's] participation in the charged conspiracy continued after he turned eighteen" the conviction must be vacated (citing *Corporacion Mexicana De Mantenimiento Integral, S De. R.L. De C.V. v. Pemex-Exploracion Y Produccion*, 832 F.3d 92, 115 (2d Cir. 2016) and *United States v. Jacobson*, 15 F.3d 19, 22 (2d Cir. 1994)).[2]

---

[2] This approach is the same in other Circuits. *See McClaren*, 13 F.4th at 410 (finding there were sufficient facts to find that the defendant ratified his conduct because the defendant committed a murder after turning eighteen and the Government presented evidence that linked the murder to the charged conspiracy); *Mendez*, 29 F.4th at 1326 (finding the Indictment's allegations sufficient to find that the defendant ratified his conduct at the motion to dismiss phase because the Indictment alleged "multiple post-majority instances of Mendez possessing drugs and weapons

The parties have not relied on, and the Court has not independently identified, any analogous cases where subject matter jurisdiction was found based solely on the time period that the conspiracy existed, on the theory that the defendant remained a member but took no actions in furtherance of the conspiracy.[3] Moreover, other Circuits that have more directly addressed this question have explicitly required some affirmative action in furtherance of the charged conspiracy to support ratification. *See, e.g.*, *Mendez*, 28 F.4th at 1326 (stating that the juvenile must engage "in additional acts in furtherance of the ongoing conspiracy after reaching the age of majority").

While this Circuit has not dispositively determined if, as the Government contends, it is enough that Mr. Jones's admission that he was a member of the East End Gang after he turned eighteen, the Court need not determine subject matter jurisdiction to resolve this motion. *See*

---

and flashing MS-13 gang signs with co-defendants and unindicted co-conspirators—all acts which, if proved, a reasonable jury could determine were intended by Mendez to achieve the goals of the enterprise conspiracy"); *see also United States v. Cruz*, 805 F.2d 1464, 1475 (11th Cir. 1986) (finding sufficient evidence that the defendant ratified his conduct because the Government presented evidence at trial that, after turning eighteen, the defendant "invited [a witness] down to Miami to purchase cocaine"); *United States v. Maddox*, 944 F.2d 1223, 1233 (6th Cir. 1991) (finding sufficient evidence that the defendant ratified his conduct where the defendant, after turning eighteen, was seen "at various drug houses" used by co-conspirators and seen "selling drugs" and emphasizing that the court "do[es] not believe . . . that a person who does absolutely nothing to further the conspiracy or to reaffirm membership in it after his eighteenth birthday can be held criminally liable as an adult in federal court"); *United States v. Delatorre*, 157 F.3d 1205, 1209 (10th Cir. 1998) (finding the defendant ratified his conduct because the defendant committed several predicate acts and overt acts in furtherance of the charged conspiracy after turning eighteen).

[3] There are a few courts that have accepted the Government's argument at the motion to dismiss stage. *See, e.g.*, *United States v. Conyers*, No. S13 15-CR-537 (VEC), 2016 WL 7189850, at *5 (S.D.N.Y. Dec. 9, 2016). The procedural posture, however, is such that those courts had to accept the indictment's allegations as true and any facts outside of the indictment that may have contradicted the theory of ratification would not result in the court dismissing the indictment; instead, such facts would only create a disputed issue of fact that needed to be resolved at trial. *See, e.g.*, *United States v. Sampson*, 898 F.3d 270, 279 (2d Cir. 2018) ("If [a] pretrial claim is substantially founded upon and intertwined with evidence concerning the alleged offense, the motion falls within the province of the ultimate finder of fact and must be deferred." (citations and quotation marks omitted)). Moreover, at the motion to dismiss stage, the Government's allegations need only "track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Vilar*, 729 F.3d 62, 80 (2d Cir. 2013) (citations and quotation marks omitted); *see also United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992) ("[A]n indictment must be read to include facts which are necessarily implied by the specific allegations made." (citations and quotation marks omitted)). Therefore, the more analogous cases are those in which the court is reviewing a factual record, such as a Rule 29 motion.

*United States v. Cheruvu*, No. 14-CR-130S, 2019 WL 1047147, at *3 (W.D.N.Y. Mar. 5, 2019) (finding the defendant had made a sufficient showing on legal innocence to allow withdrawal because the defendant "has asserted innocence, specifically arguing that 'he would not have pleaded guilty had he known that conscious avoidance did not suffice to prove willfulness'" and "did not fully understand the nature of the charges to which he was pleading").

It is enough, at this stage, that Mr. Jones unequivocally denies ratifying his conduct after eighteen and that the parties do not dispute that Mr. Jones was incarcerated from when he was seventeen-years-old to the present.[4] Moreover, as will be discussed at length below, *see infra* pp. 19–22, even if Mr. Jones's "admission" that he was a "member" of the East End Gang during the period alleged in the Indictment would be sufficient for ratification, Mr. Jones did not understand the implications of this statement and therefore, he has raised "significant question about the voluntariness of the original plea," *Albarran*, 943 F.3d at 117. *See McCarthy v. United States*, 394 U.S. 459, 467 (1969) ("[B]ecause a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts."). *Cf. United States v. Aybar-Peguero*, Nos. 21-1711, 21-1847, 2023 WL 4358471, at *4 (2d Cir. 2023) ("While it is true that '[w]e have accepted a reading of the indictment to the defendant coupled with [an] admission of the acts described in it as a sufficient factual basis for a guilty plea,' we require more 'if the defendant denies an element of the offense or generally maintains his innocence.'" (citations omitted)).

---

[4] While Mr. Jones's incarceration does not create any sort of presumption of withdrawal from the conspiracy, and the Court does not suggest that Mr. Jones must show withdrawal to succeed on his ratification arguments, Mr. Jones's incarceration does lend support to his contention that he did not ratify his conduct after he turned eighteen. *See, e.g.*, *United States v. Leslie*, 658 F.3d 140, 143–44 (2d Cir. 2011) ("[W]hile arrest or incarceration may constitute a withdrawal from a conspiracy, it does not follow that in every instance it must . . . In the trial context, evidence of imprisonment during a conspiracy is merely a relevant fact that entitles the defendant to a jury instruction on withdrawal . . . The jury decides whether imprisonment constitutes a withdrawal in light of the length and location of the internment, the nature of the conspiracy, and any other available evidence." (citations and quotation marks omitted)).

Finally, while the Government requests an evidentiary hearing on this issue, such a hearing is not appropriate. When a motion to withdraw challenges the factual basis of the plea, the relevant inquiry is whether the facts on the record at the time of the plea were sufficient. *See Adams*, 448 F.3d at 502 ("[I]n determining whether it was harmless error for the district court to find a sufficient factual basis for the plea, we must review all of the evidence that existed on the record at the time of the plea and on which the district court could have permissibly relied."); *United States v. Garcia*, 587 F.3d 509, 514 (2d Cir. 2009) (stating that, under Rule 11, the district court can consider the defendant's plea allocution and may also "look more broadly to any facts on the record at the time of the plea proceeding"); *United States v. Rodriguez*, 501 F. App'x 86, 90 (2d Cir. 2012) ("[S]o long as the facts relied on are placed on the record at the time of the plea, the district court, in determining whether there was a factual basis for the plea, is free to rely on any facts at its disposal—not just the admissions of the defendant." (citations omitted)).[5] Therefore, the Government cannot now, several months after the plea hearing, develop the factual basis for the plea, particularly because, based on the motions before

---

[5] The Government relies on *United States v. Lloyd*, 901 F.3d 111, 124 (2d Cir. 2018), for the assertion that a district court is "not limited to considering materials available at the time of the change of plea," and in support of its request for an evidentiary hearing. Suppl. Opp'n at 5. The comparison, however, is not quite apt for application to Mr. Jones's circumstances because *Lloyd* applies to the court's determination during sentencing rather than the factual basis for a plea as it relates to a motion to withdraw. *See United States v. Westley*, No. 3:17-CR-171 (MPS), 2019 WL 2527297, at *6 (D. Conn. June 19, 2019) (finding that *Lloyd* did not allow the Government to *post hoc* provide the factual basis for a plea because "the Government overlooks the interplay between Rule 11(b)(3) and 11(b)(1)(G)" described in *Lloyd*, which is that "Rule 11(b)(1)(G) calls for the district court to inform the defendant of and ensure 'that the defendant understands . . . the nature of each charge to which the defendant is pleading.' . . . Rule 11(b)(3) focuses on the court's own careful determination, before entering judgment on a guilty plea, 'that there is a factual basis for the plea'" (citations omitted)). Here, the concern is whether Mr. Jones "understands . . . the nature of" the charges, rather than the Court's determination before entering judgment. *Id.*

Likewise, the Government cannot create the factual basis for the plea with evidence of an incident that occurred after Mr. Jones pled guilty. *See* Suppl. Opp'n at 9 (arguing that evidence of Mr. Jones's alleged January 2023 altercation in Wyatt could provide the factual basis for the plea).

the Court, Mr. Jones would contest these facts.[6]

Therefore, whether this Court has subject matter jurisdiction under the Juvenile Delinquency Act is a factual determination that will need to be made after the Government presents its evidence at trial.

Accordingly, this factor weighs in favor of granting Mr. Jones's motion to withdraw his guilty plea.

### B.  Time Lapse

Under this factor, courts consider "the amount of time that has elapsed between the plea and the motion" because "the longer the elapsed time, the less likely withdrawal would be fair and just." *Schmidt*, 373 F.3d at 102–03; *see also United States v. Doe*, 537 F.3d 204, 213 (2d Cir. 2008) (observing that "[w]hereas a swift change of heart may indicate a plea made in haste or confusion," a months-long delay in filing a motion to withdraw supports a finding that the plea was entered voluntarily).

Mr. Jones argues that the timing of his motion to withdraw should be "seen 'in concert with consideration of other factors'" and emphasizes that "the significance of a time delay is context-dependent." Mot. at 3 (quoting *United States v. Jones*, 479 F.3d 975, 978 (8th Cir. 2007)). Mr. Jones also argues that he was only recently appointed new counsel and his new counsel filed the motion to withdraw one month after he was appointed. Reply at 1–2.

---

[6] Additionally, to the extent that the Government intends to rely on a prison altercation that occurred in January 2023, this would not be sufficient because the relevant time period for ratification is the time period between when Mr. Jones turned eighteen and the date of the Indictment. *See Ramirez*, 297 F.3d at 190–91 (construing § 5031 to mean that the defendant must be "under twenty-one at the time the juvenile information charging the crime is filed"); *see also United States v. Woods*, 827 F.3d 712, 717 (7th Cir. 2016) (finding that "[e]very circuit court which has considered this issue," including the Second Circuit, has "reasoned that jurisdiction under the Juvenile Act is determined at the time the case is initiated"); *United States v. Burnett*, No. 05-CR-240, 2008 WL 11411172, at *3 (E.D. Wisc. June 3, 2008) ("Thus, in the present case, the government must make a threshold demonstration that Burnett ratified his involvement in the conspiracies in the 11 days between his eighteenth birthday and the date the indictment was returned.").

The Government argues that the delay between when Mr. Jones pled guilty, on August 29, 2022, and when Mr. Jones filed his motion to withdraw his guilty plea, March 9, 2023, supports the voluntariness of his plea and weighs against allowing him to withdraw. Opp'n at 12. More specifically, the Government emphasizes that this six-month delay "strongly supports" denying the motion because "the Second Circuit and this Court repeatedly have held that shorter delays . . . warranted denial of a motion to withdraw." *Id.* at 13 (citing *Schmidt*, 373 F.3d at 103 (three to eight month delay) and *United States v. Gutierrez*, No. 3:16CR114 (VAB), 2017 WL 2951603, at *5 (D. Conn. July 10, 2017) (four-month delay), among others).

The Court agrees in part and disagrees in part.

"For withdrawals of guilty pleas, the relevant timeline is the time between when the plea was entered and when the Defendant unequivocally communicated his desire to withhold the guilty plea." *United States v. Goode*, No. 16-CR-00529-01 (NSR), 2018 WL 6698676, at *8 (S.D.N.Y. Dec. 20, 2018); *see also United States v. Wilson*, 828 F. Supp. 2d 679, 682, 685 (S.D.N.Y. 2011) (basing its analysis on the time that passed between the change of plea hearing and a letter the defendant submitted "requesting new counsel and informing the court that she wished to withdraw her guilty plea," despite the fact that the defendant did not file her motion to withdraw until several months later).

Courts in this Circuit have found that this *Schmidt* factor weighs against a defendant seeking to withdraw his plea if there is a delay of more than two months between the guilty plea and the defendant's request to withdraw his guilty plea. *See, e.g.*, *Wilson*, 828 F. Supp. 2d at 682, 685 (finding this factor weighed against the defendant where she plead guilty on May 3, 2011 and submitted a letter requesting to withdraw her guilty plea on July 12, 2011 because "[m]ore than two months elapsed from the time of the guilty plea until the first letter from Wilson in

14

which she sought to challenge her plea"), *aff'd*, 523 F. App'x 30 (2d Cir. 2013) (summary order); *United States v. Baum*, 380 F. Supp. 2d 187, 206–07 (S.D.N.Y.) (three and a half months passed), *aff'd sub nom. United States v. Best*, 139 F. App'x 366 (2d Cir. 2005). *But see United States v. Garcia*, No. 21-cr-412 (JSR), 2022 WL 18004453, at *1–4 (S.D.N.Y. Dec. 30, 2022) (granting motion to withdraw where the defendant pled guilty on March 8, 2022 and then submitted a *pro se* motion seeking to withdraw his guilty plea one month later on April 7, 2022).

Here, Mr. Jones pled guilty on August 29, 2022 and then submitted a letter to the Court requesting to withdraw the plea on October 27, 2022, and thus, two months passed between his guilty plea and his letter unequivocally stating his intent to withdraw the guilty plea. Therefore, the time lapse weighs against Mr. Jones, albeit only slightly. *See Wilson*, 828 F. Supp. 2d at 682, 685 (finding this factor weighed against the defendant because "[m]ore than two months elapsed from the time of the guilty plea until the first letter from Wilson in which she sought to challenge her plea").

Accordingly, this factor weighs slightly against granting Mr. Jones's motion to withdraw his guilty plea.

### C. Voluntariness and Ineffective Assistance

"Where a motion to withdraw a plea argues involuntariness," to be successful "the defendant 'must raise a significant question about the voluntariness of the original plea.'" *Albarran*, 943 F.3d at 124 (quoting *Doe*, 537 F.3d at 211).

Here, Mr. Jones's involuntariness argument takes two forms: first, Mr. Jones argues he was not able to properly review discovery before he pled guilty, making his plea unknowing; and second, Mr. Jones argues his plea was unknowing because his prior counsel was ineffective for not informing him of the subject matter jurisdiction issue addressed above. Mot at 4–8; Suppl.

Mot. at 4–5.

The Court will address each argument in turn.

### 1. Discovery

"[A] defendant's 'reevaluation of the government's case against him' does not justify withdrawal of a plea." *Albarran*, 943 F.3d at 118 (quoting *Schmidt*, 373 F.3d at 103). Moreover, sworn testimony given during a plea colloquy "carries such a strong presumption of accuracy that a district court does not, absent a substantial reason to find otherwise, abuse its discretion in discrediting later self-serving and contradictory testimony as to whether a plea was knowingly and intelligently made." *United States v. Juncal*, 245 F.3d 166, 171 (2d Cir. 2001).

Mr. Jones argues that while he was incarcerated at Manson Youth he did not have access to the voluminous discovery issues and therefore, when he pled guilty, he did not have "a reasonable opportunity to understand the evidence, or lack thereof, that the Government could produce at trial." Mot. at 4–5. Mr. Jones explains that Manson Youth does not have the capacity to allow inmates to review voluminous discovery on a computer and, due to the volume of discovery in this case, it was impractical, if not impossible, for Mr. Jones to review a paper file. *Id.* Mr. Jones also emphasizes that he was a young adolescent at the time he pled guilty, and argues that he struggled with the stress of the situation, cooperating with his prior counsel, and making the ultimate decision. *Id.* at 5. Mr. Jones contends that he only was able to personally review the discovery in this case after he pled guilty and was transferred to the adult facility, Donald W. Wyatt Detention Facility ("Wyatt"). *Id.* at 6. Mr. Jones is "reluctant to state the specific facts" that impacted his decision to now move to withdraw his guilty plea, but he argues that "the standard does not require this." *Id.* at 8.

In response, the Government argues that Mr. Jones has not created a substantial question

as to the voluntariness of his plea because he has not offered any evidence to support his argument. Opp'n at 8–9. More specifically, the Government emphasizes that Mr. Jones's statements during the plea hearing, as well as the stipulations in the plea agreement, "flatly contradict[] Mr. Jones'[s] argument." *Id.* at 9. The Government argues that, during the plea hearing, Mr. Jones repeatedly affirmed that he was pleading guilty freely and voluntarily. *Id.* Therefore, in the Government's view, Mr. Jones's statements "carry a strong presumption of verity." *Id.*

In reply, Mr. Jones's new counsel contends that he did not include an argument about the "reasonable doubt" Mr. Jones found in his post-plea review of the discovery file because this was not necessary and would prejudice his ultimate defense if he is able to withdraw his guilty plea. *Id.* at 1–2. In Mr. Jones's view, the validity of his plea allocution is not relevant because his motion to withdraw is based on information he did not have at the time. *Id.* at 3.

The Court disagrees.

"'[S]olemn declarations in open court carry a strong presumption of verity.' . . . [and] [t]hey 'are generally treated as conclusive in the face of the defendant's later attempt to contradict them.'" *United States v. Ifeagwu*, No. 99-1133, 2000 WL 426200, at *3 (2d Cir. 2000) (first quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); and then quoting *Adames v. United States*, 171 F.3d 728, 732 (2d Cir. 1999)). "[C]orroborating facts" for a defendant's arguments are "essential if a court is to credit a defendant's present claims of innocence over his prior (and now contradicted) admissions of guilt under oath." *United States v. McKreith*, No. 3:09CR117 (MRK), 2011 WL 1546932, at *5 (D. Conn. Apr. 11, 2011) (cleaned up).

The Government notes, and Mr. Jones does not dispute, that Mr. Jones was able to review some discovery before entering his plea. *See* Opp'n at 10 n.2; Reply at 3 n.1. Mr. Jones,

however, does not identify, even in a general sense, what discovery he reviewed after he pled guilty that lead to the instant motion. Without any facts to corroborate what Mr. Jones did not know before his plea hearing, the Court cannot "credit [his] present claims . . . over his prior . . . admissions of guilt under oath." *McKreith*, 2011 WL 1546932, at *5. Moreover, the Court cannot assess whether the discovery Mr. Jones reviewed after his guilty plea was meaningful to a defense. *See United States v. Gonzalez*, 647 F.3d 41, 60 (2d. Cir. 2011) (finding no justification for withdrawal when defendant "asserted in his affidavit that he wished to prove his 'legal innocence' . . . and that he had 'never wavered in his desire to prove his legal innocence' . . . [but] did not refer to anything that would corroborate [the] claim").

During his plea allocution, Mr. Jones affirmed that he had had enough time to consider the charges against him, including the Government's evidence and consultations with counsel. For example:

> THE COURT: . . . . Mr. Jones, do you understand the charge we're here to discuss today?
> THE DEFENDANT: Yes, sir.
> THE COURT: All right. And you understand the penalties that are associated with that charge?
> THE DEFENDANT: Yes, sir.
> THE COURT: All right. And have you had enough of an opportunity and information to discuss your case with [your counsel]?
> THE DEFENDANT: Yes, sir.
> THE COURT: And do you believe that [your counsel] has answered your questions well enough and given you enough advice and guidance for you to make a decision about pleading guilty today?
> THE DEFENDANT: Yes, sir.

Tr. at 8:9–25, ECF No. 250 ("Tr.").

Mr. Jones was provided ample opportunity at the plea hearing to raise any concerns or questions about the plea, but he made no mention of any concerns. Therefore, Mr. Jones has not provided a basis for the Court to conclude that his incomplete access to discovery before

pleading guilty raises a significant question as to the voluntariness of his plea. *See United States v. Eastman*, No. 3:16CR6 (MPS), 2017 WL 1855869, at *5–6 (D. Conn. May 8, 2017) (finding the defendant had not raised a question as to the voluntariness of his plea where the Court conducted a similar colloquy during the plea hearing and the defendant did not provide any evidence to challenge his prior statements because the defendant "manifested no doubts, hesitation, or lack of understanding as to what he was doing or the consequences of his guilty plea"); *United States v. Scott*, 569 F. App'x 55, 56 (2d Cir. 2014) ("[The defendant's] assertions that his plea was involuntary are belied by his own statements, made under oath during his plea allocution, representations that his plea was knowing and voluntary and was supported by a factual basis, and confirming that he understood the specific rights he was giving up by pleading guilty.").

Accordingly, this does not create a substantial question as to the voluntariness of Mr. Jones's plea.

### 2.  Ratification

Rule 11 is "designed to protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge." *Adams*, 448 F.3d at 499–500 (quotation marks omitted). Therefore, "because a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." *McCarthy*, 394 U.S. at 467. "Given the constitutional implications, 'this Circuit has adopted a standard of strict adherence to Rule 11 and . . . therefore we examine critically even slight procedural deficiencies to ensure that the defendant's guilty plea was a voluntary and intelligent choice, and that none of the defendant's substantial rights has been

compromised.'" *United States v. Johnson*, 850 F.3d 515, 522 (2d Cir. 2017) (quoting *United States v. Livorsi*, 180 F.3d 76, 78 (2d Cir. 1999)).

Mr. Jones argues that his plea was not knowing and voluntary because if he had "been presented with the defense of lack of subject matter jurisdiction," he "would not have pleaded guilty and would have insisted on going to trial." Suppl. Mot. at 5. Mr. Jones emphasizes that "nowhere in the plea agreement, the canvas, or the Government's statement of the factual basis for the plea, is there a factual statement or agreement that Mr. Jones ratified his pre-eighteen acts." *Id.* at 4.

The Government argues that Mr. Jones's plea was voluntary and knowing because "admitted that he remained a member of the racketeering enterprise following his eighteenth birthday." Suppl. Opp'n at 9. In the Government's view, Mr. "Jones was fully advised during the plea colloquy and in the written plea agreement about the trial rights he would be giving up if he chose to move forward and plead guilty and he chose to do so." *Id.*

Mr. Jones responds by re-emphasizing that his plea was "involuntary[] because he did not understand that his concession that he 'was a member' of the gang after he turned eighteen was the sole legal support for the government's jurisdiction to prosecute him." Suppl. Reply at 2. In Mr. Jones's view, the "record is blank as to Mr. Jones's cognizance of the legal significance of this concession, and equally blank as to the factual support for the Government's proposition that he actively ratified his participation in the conspiracy." *Id.*

The Court agrees.

While the plea agreement included the specific time frame alleged in the Indictment, when Mr. Jones was asked to explain his conduct in his own words, he did not include the time period that he was allegedly a member of the East End Gang. Tr. at 35 (stating only that he "was

a part of a group in the East End in Bridgeport" without including any statement about the time period). This is consistent with what Mr. Jones now argues—that he did not know it was legally significant that he may have been a member of the East End Gang after he turned eighteen. Notably, the Government also did not reference evidence of ratification during the plea allocution, despite the lengthy description of the Government's other evidence of Mr. Jones's conduct and the Court's invitation for the Government to describe the evidence with more detail.[7] Tr. at 35:19–39:9. In response to the Government's recitation of the evidence, Mr. Jones testified that this was "consistent with [his] understanding of the [plea] agreement." Tr. at 40:13–17.

Based on the lack of attention given to the time period of Mr. Jones's involvement in the charged conspiracy during the plea hearing, the fact that none of the parties, including the Court, described the legal requirements for subject matter jurisdiction, and Mr. Jones's contention that his counsel did not advise him of this issue, Mr. Jones "may have fundamentally misunderstood the nature of the charges against him" and "[t]here is no clear indication from the plea proceeding that the conduct which [Mr. Jones] admit[ted] constitutes" sufficient evidence for finding the Court has subject matter jurisdiction "which is required in order for a plea to comport with Rule 11." *Cheruvu*, 2019 WL 1047147, at *3–5; *see also Westley*, 2019 WL 2527297, at *7 (finding the defendants plea was not knowing and voluntary where the defendant was not apprised of the legal basis of the charges by the court because "[e]ven if [the court] could cobble together a factual basis for the defendants' pleas under the theory of liability the Government now presents, [the court] could not conclude that they entered those pleas knowingly and

---

[7] The Government did reiterate the time frame in the plea agreement when asked by the Court to describe the contents of the plea agreement. Tr. at 18:18–21. As already noted, however, Mr. Jones's statements on the record suggest that he did not have the required understanding of the legal significance of the time period.

voluntarily[;] [The court] failed to accurately apprise them of the elements of the offense by suggesting that conduct not amounting to racketeering acts was sufficient to satisfy the statute").

Accordingly, Mr. Jones has raised a significant question about the voluntariness of his plea and this factor weighs in favor of granting Mr. Jones's motion.[8]

### D.  Prejudice to the Government

"The [g]overnment is not required to show prejudice when opposing a defendant's motion to withdraw a guilty plea where the defendant has shown no sufficient grounds for permitting withdrawal; however, the presence or absence of such prejudice may be considered by the district court in exercising its discretion." *United States v. Lam Peralta*, 792 F. App'x 68, 71 (2d Cir. 2019) (quoting *Gonzalez*, 970 F.2d at 1100).

Mr. Jones argues that any delay is immaterial because no "meaningful work has gone into preparation for sentencing" and several of Mr. Jones's co-defendants are scheduled for trial. Mot. at 8–9. In Mr. Jones's view, the Government would not be prejudiced because "[t]his is a RICO case at which much of the same evidence would have to be introduced regardless of who, or how many, elected a trial." *Id.* at 9. Mr. Jones's new counsel represented that he is "ready, willing, and able during the[] next seven month to prepare for" the firm October 2023 trial date. *Id.*

The Government argues it is prejudiced because Mr. Jones and Mr. Moore, the two persons allegedly responsible for one of the predicate murders, have plead guilty and therefore, "allowing Mr. Jones to withdraw his plea now would mean that the memories of the witnesses . . . would have faded by more than eight months." Opp'n at 12–13. The Government also contends

---

[8] Because the Court finds that Mr. Jones has raised significant questions about the voluntariness of his plea on the grounds described above, it does not—and need not—address whether Mr. Jones's counsel was constitutionally deficient except to note that Mr. Jones has raised a colorable claim that would likely require an evidentiary hearing. *See, e.g.*, *DeLuca v. Lord*, 77 F.3d 578, 588–90 (2d Cir. 1996) (finding that defense counsel's "disregard of the EED defense," which the court deemed "an important defense," "fell below what was required by the prevailing professional standards of conduct" and that this failure prejudiced the defendant).

that the victim's mother "would be forced to reopen the significant ordeal simply because Mr. Jones wants to" proceed to trial. *Id.* at 14. Finally, the Government emphasizes that "societal interest in finality" of guilty pleas. *Id.*

The Court disagrees.

"'Prejudice' in the context of plea withdrawal typically refers to depriving the Government of the benefit of its bargain by having the burden of trial preparation suddenly thrust upon it, as well as the potential difficulty to the Government in securing evidence against the defendant that would have been easier to secure at an earlier moment in time." *United States v. Lopez*, 385 F.3d 245, 254 (2d Cir. 2004) (citations omitted).

Here, the Government is preparing for an October 30, 2023 trial of three of Mr. Jones's co-defendants, regardless of the outcome of this motion. *See* Order, ECF No. 30 (setting pre-trial deadlines). In a RICO conspiracy, the acts of one member would potentially be admissible against all members of the alleged conspiracy and therefore, much of the same evidence would be used during the currently scheduled trial, with or without Mr. Jones. *See United States v. DiNome*, 954 F.2d 839, 843 (2d Cir. 1992) (finding that severance was not warranted because evidence of criminal acts committed by other co-defendants would be relevant in RICO trial "to prove the existence and nature of the RICO enterprise . . . [and] to prove a pattern of racketeering activity by each defendant"); *United States v. Cortesiano*, 2012 WL 1450401, at *4 (E.D.N.Y. 2012) ("The Second Circuit has repeatedly held that proof of crimes committed by other participants in a RICO conspiracy is relevant to show the existence and nature of the enterprise.").

While the Government argues it would be prejudiced because the two Defendants who were responsible for one of the predicate acts have pled guilty, it has not stated that it would not

nonetheless rely on evidence of this predicate act to prove the existence of the conspiracy in the trial of the remaining co-Defendants. *See United States v. Applins*, 637 F.3d 59, 73 (2d Cir. 2011) (stating that, because a RICO enterprise is "oftentimes more readily proven by what it does, rather than by abstract analysis of its structure," the Government may rely on "proof of various racketeering acts . . . to establish the existence of the charged enterprise"); *United States v. White*, 7 F.4th 90, 99 (2d Cir. 2021) ("[P]roof of the actual existence of a RICO enterprise – though not necessary to convict on a conspiracy charge – can be highly relevant to establishing an alleged RICO conspiracy." (citations omitted)).

Moreover, the Government alleges that Mr. Jones participated in a narcotics conspiracy that each of the remaining three co-Defendants allegedly participated in as well. *See* Indictment ¶ 12a.

Therefore, the Government has not "set forward any argument that, if [the Court] grant[s] [Mr. Jones's] motion[], it will be disadvantaged at trial in ways it would not have been absent [his] plea[]" because "there is no argument . . . that the government has disclosed information or strategy as a result of [his] plea[] that would provide him an unfair advantage at trial" or "that the passage of time has prejudiced the government because witnesses have become unavailable." *United States v. Alazzam*, No. 3:08cr48 (SRU); 3:08cr127 (SRU), 2009 WL 1941833, at *5 (D. Conn. July 6, 2009); *see also Cheruvu*, 2019 WL 1047147, at *3 (finding that, "[w]hile the Court is sympathetic to" the government's argument that witness's memories have diminished, the government had not shown prejudice because "the [g]overnment ha[d] not convincingly

24

demonstrated how it will be in a worse position than it would have been had [the defendant]

proceeded to trial without pleading guilty" (citations and quotation marks omitted)).[9]

Accordingly, this factor weighs in favor of granting Mr. Jones's motion to withdraw his

guilty plea.

## IV.     CONCLUSION

For the foregoing reasons, Mr. Jones's motion to withdraw his guilty plea is **GRANTED**.

**SO ORDERED** at Bridgeport, Connecticut, this 21st day of July, 2023.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE

---

[9] Notably, on reconsideration, the court in *Cheruvu* reaffirmed its finding that the Government had not shown prejudice, even though the Government had provided "new evidence" that a witness had passed away. *See United States v. Cheruvu*, No. 14-CR-130S, 2019 WL 3000682, at *3 (W.D.N.Y. July 10, 2009).